No. 25-1230

# In the United States Court of Appeals for the First Circuit

IN RE CVS HEALTH CORPORATION SECURITIES ACT LITIGATION

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
(CASE NO. 1:19-CV-00434-MSM- LDA)
(THE HONORABLE MARY S. MCELROY, J.)*

**APPELLEES' BRIEF**

DANIEL J. KRAMER
GEOFFREY R. CHEPIGA
EMILY M. MILLER
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
  *1285 AVENUE OF THE AMERICAS
  NEW YORK, NY 10019
  (202) 373-3000*

RACHELLE GREEN
CERVENKA GREEN &
DUCHARME LLP
  *225 DYER STREET, 2ND FLOOR
  PROVIDENCE, RI 02903
  (401) 214-1020*

STEVEN M. FARINA
AMANDA M. MACDONALD
MELISSA B. COLLINS
MICHAEL J. MESTITZ
WILLIAMS & CONNOLLY LLP
  *680 MAINE AVENUE, S.W.
  WASHINGTON, DC 20024
  (202) 434-5000*

CHRISTOPHER N. DAWSON
WHELAN CORRENTE &
FLANDERS LLP
  *100 WESTMINSTER ST., STE. 710
  PROVIDENCE, RI 02903
  (401) 270-4500*

*Counsel for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Appellee CVS Health Corporation states that it has no parent corporation, that it is a publicly traded corporation, and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES ............................................................... 1

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF THE CASE ................................................................. 6

I.  Factual History ..................................................................................... 6

  A.  Omnicare Acquisition and Initial Goodwill Assessment ................. 6

  B.  CVS Discloses Challenges and Risks to the LTC Unit ................. 7

    1.  Goodwill Disclosures .......................................................... 7

    2.  CVS Warns of Pertinent Risks ............................................ 9

  C.  CVS Records Goodwill Impairment Charges in 2018 and 2019 ....... 10

II.  Prior Cases and Procedural History ..................................................... 11

  A.  The District Court Dismisses *Fire Fighters*, and this Court Affirms ............................................................................... 12

  B.  The Rhode Island and New York State Courts Dismiss Similar 1933 Act Cases ........................................................... 16

    1.  New York:  *LPF* .............................................................. 16

    2.  Rhode Island:  *In re CVS Health Corporation Securities Act Litigation* ................................................................ 17

  C.  The District Court Dismisses Plaintiff's Complaint ...................... 20

SUMMARY OF ARGUMENT .............................................................. 25

ARGUMENT ....................................................................................... 26

I.  The District Court Correctly Ruled That CVS's Statements Were Not False or Misleading Because CVS's Disclosures Were Sufficient. ............. 26

  A.  CVS Adequately Disclosed Customer Losses .............................. 26

  B.  CVS Adequately Disclosed The "Rollover" Investigation ............. 31

  C.  The District Court Correctly Applied The 1933 Act's Standards, Including The Possibility of Liability For Omissions. ...... 36

II.  Plaintiff's Other Theories Fail. ............................................................ 42

A.   Plaintiff's Claims Regarding Goodwill, GAAP Compliance, and the Value of the LTC Unit Fail. ....................................................43

B.   Plaintiff's Risk Warnings Claims Fail. ................................................49

III.   Plaintiff Alleges No False or Misleading Statements Under Section 14. ..........................................................................................53

CONCLUSION ...........................................................................................54

# TABLE OF AUTHORITIES

Page

## CASES

*Abramson v. NewLink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020)......................46

*ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008) .......................44

*Arkansas Public Employee Retirement System v. GT Solar International*,
    2009 WL 3255225 (D.N.H. Oct. 7, 2009)....................................................50, 51

*Atwells Realty Corp. v. Scottsdale Ins. Co.*,
    2021 WL 2396584 (R.I. Super. Ct. June 4, 2021)..............................................48

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).......................................30

*Burstein v. Applied Extrusion Technologies, Inc.*,
    150 F.R.D. 433 (D. Mass. 1993).........................................................................51

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*
    *Inc.*, 856 F.3d 605 (9th Cir. 2017) .......................................................................45

*City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*
    (*"Fire Fighters"*), 519 F. Supp. 3d 80 (D.R.I. 2021),
    aff'd, 46 F.4th 22 (1st Cir. 2022)..................................................................passim

*City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*
    (*"Fire Fighters"*), 541 F. Supp. 3d 231 (D.R.I. 2021),
    aff'd, 46 F.4th 22 (1st Cir. 2022) .......................................................................14

*City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*
    (*"Fire Fighters"*), 46 F.4th 22 (1st Cir. 2022)..............................................passim

*City of Omaha v. CBS Corp.*, 2011 WL 2119734 (S.D.N.Y. May 24, 2011),
    aff'd, 679 F.3d 64 (2d Cir. 2012).........................................................................48

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ..................................................................32, 33, 36

*Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021)......................................................................................46

*Cooperman v. Individual, Inc.*, 1998 WL 953726 (D. Mass. May 27, 1998),
   *aff'd*, 171 F.3d 43 (1st Cir. 1999) ...................................................................44

*Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693
   (D. Mass. Mar. 31, 2015), *aff'd* 868 F.3d 31 (1st Cir. 2017) ...........................29

*Coyne v. Metabolix, Inc.,* 943 F.Supp.2d 259 (D. Mass. 2013) .............................29

*Dalberth v. Xerox Corp.*, 766 F.3d 172 (2d Cir. 2014) .........................................29

*Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153 (S.D.N.Y. 2018)...................35

*Employees Retirement System of City of St. Lewis v. Jones*,
   2021 WL 1890490 (S.D. Ohio May 11, 2021)...................................................52

*Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011) .......................................48

*Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018).....................................................34

*Gerneth v. Chiasma, Inc.*, 2018 WL 935418 (D. Mass. Feb. 15, 2018).................50

*Hill v. Gozani*, 638 F.3d 40 (1st Cir. 2011) ..........................................................30

*In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) .....45, 48

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004),
   *aff'd*, 165 F. App'x 928 (2d Cir. 2006).........................................................32, 34

*In re CVS Health Corp. Sec. Litig.*, 328 A.3d 614 (R.I. 2025)...........................3, 20

*In re CVS Health Corp. Sec. Litig.*,
   PC-2019-05658 (R.I. Super. Ct. Feb. 20, 2023),
   *aff'd*, 328 A.3d 614 (R.I. 2025) ........................................................1, 18, 21, 49

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013) .........................................................40, 50

*In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434 (S.D.N.Y. May 7, 2020),
   *aff'd*, 844 F. App'x 385 (2d Cir. 2021)....................................................45, 47, 48

*In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp.3d 1 (S.D.N.Y. 2016)...........35

*In re MGT Cap. Invs., Inc. Sec. Litig.*,
   2018 WL 1224945 (S.D.N.Y. Feb. 27, 2018) ...................................................30

*In re Tenaris S.A. Securities Litigation*,
   493 F. Supp. 3d 143 (E.D.N.Y. 2020) ....................................................52

*In re Transkaryotic Therapies Inc. Securities Litigation*,
   319 F. Supp. 2d 152 (D. Mass. 2004) ....................................................50

*Karth v. Keryx Biopharms., Inc.*, 6 F.4th 123 (1st Cir. 2021) ...................................44

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994)...........................29

*Labourers' Pension Fund of Cent. & E. Can. v. CVS Health Corp.* (*"LPF"*),
   144 N.Y.S.3d 16 (N.Y. App. Div. 2021) ......................................................*passim*

*Litwin v. Blackstone Group*, 634 F.3d 706 (2d Cir. 2011) ....................................36

*Lucescu v. Zafirovski*, 2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018) ....................45

*Macquarie Infrastructure Corp. v. Moab Partners*,
   601 U.S. 257 (2024)...................................................................22, 38, 39

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC
   Partners, Inc.*, 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ...........................45

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)......................................................27

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)...........................................................43, 44, 45

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
   681 F.3d 114 (2d Cir. 2012) ........................................................36, 40

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ....................................................................35

*Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*,
   2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017),
   *aff'd*, 773 F. App'x 630 (2d Cir. 2019).................................................37

*Rizvi v. N. Shore Hematology-Oncology Assocs., P.C.*,
   132 N.Y.S.3d 600 (N.Y. Sup. Ct. 2020)..................................................48

*Roeder v. Alpha Industries, Inc.*, 814 F.2d 22 (1st Cir. 1987)..........................51, 52

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004).....................................................50

vi

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) .....................................29

*Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019) ...............52

*Silverstrand Investments v. AMAG Pharmaceuticals*,
    707 F.3d 95 (1st Cir. 2013).................................................................36, 38, 39

*SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, 2010 WL 2473595
    (S.D.N.Y. June 17, 2010), *aff'd*, 448 F. App'x 116 (2d Cir. 2011) ..................30

*Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31 (2d Cir. 2017) ......................................37

*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
    2022 WL 17587853 (2d Cir. Dec. 13, 2022)......................................................33

*Strougo v. Tivity Health, Inc.*, 551 F. Supp. 3d 839 (M.D. Tenn. 2021)................46

*Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 842 F.3d 71 (1st Cir. 2016) .............50

*United States ex rel. Bassan v. Omnicare, Inc.*, No. 15-04179 (S.D.N.Y.) ..............5

*Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785 (N.D. Cal. 2019).......................50

*Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208 (S.D.N.Y. 2023)..........40

*Wu v. Stomber*, 883 F. Supp. 2d 233 (D.D.C. 2012),
    *aff'd*, 750 F (D.C. Cir. 2014) .............................................................................30

*Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020).........................37, 39, 41

## STATUTES, REGULATIONS, AND RULES

Securities Act of 1933 ("1933 Act").................................................................*passim*

    15 U.S.C. § 77k ("Section 11")  ...............................................................40, 42

    15 U.S.C. § 77l ("Section 12")  ........................................................................42

    15 U.S.C. § 77o ("Section 15")  ........................................................................42

Securities Exchange Act of 1934 ("1934 Act")...............................................*passim*

    15 U.S.C. § 78n ("Section 14")  ...........................................................26, 53, 54

    15 U.S.C. § 78t ("Section 20")  ........................................................................54

31 U.S.C. § 3730 ...................................................................................32

17 C.F.R. § 229 ("Regulation S-K") ...............................................*passim*

    17 C.F.R. § 229.303 ("Item 303") ..............................................*passim*

17 C.F.R. § 240.14a-1 .........................................................................53

Fed. R. Civ. P. 12(b)(6) ........................................................................24

## STATEMENT OF THE ISSUES

Whether the district court correctly dismissed Plaintiff's Amended Consolidated Class Action Complaint when Plaintiff failed adequately to allege facts inconsistent with or improperly omitted from CVS's securities disclosures.

## PRELIMINARY STATEMENT

Established federal securities law bars Plaintiff's claims, because CVS's securities filings disclosed what the law required. No amount of second-guessing can change this simple truth. Indeed, Plaintiff is the ***sixth*** plaintiff to file a putative class action lawsuit challenging the ***exact same*** CVS disclosures. One after another, the U.S. District Court for the District of Rhode Island, the New York Appellate Division, the Rhode Island Superior and Supreme Courts, and this Court—each applying long-standing federal securities law—have dismissed the same or substantially similar claims. *See Labourers' Pension Fund of Cent. & E. Can. v. CVS Health Corp.* (*"LPF"*), 144 N.Y.S.3d 16 (N.Y. App. Div. 2021); *In re CVS Health Corp. Sec. Litig.*, PC-2019-05658 (R.I. Super. Ct. Feb. 20, 2023), *aff'd*, 328 A.3d 614 (R.I. 2025); *City of Mia. Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.* (*"Fire Fighters"*), 519 F. Supp. 3d 80 (D.R.I. 2021), *aff'd*, 46 F.4th 22 (1st Cir. 2022). The same federal laws govern here, and compel the same result.

Plaintiff brings a claim under the Securities Act of 1933 ("1933 Act"), alleging that CVS's disclosures about its Long-Term Care ("LTC") unit were false

1

or misleading, or omitted necessary information, because Plaintiff claims that the challenges facing the LTC business required a goodwill write-down months before CVS recognized one. Because a company's goodwill analysis is subjective, courts broadly hold that such a theory amounts to no more than a disagreement over accounting judgment, and therefore fails to state a viable claim under black-letter securities law. Nor did CVS omit anything from its disclosures that was required to be disclosed. CVS explicitly warned investors that the assessed value of the LTC unit declined from above its carrying value by a significant margin to just 7% above impairment in 2016, A459, to within 1% of impairment in 2017, A419. CVS disclosed that this decline in its business and projections was due to several factors, including "client retention rates," and warned that the unit's goodwill might become impaired "in the near term" if the business failed to meet its forecasts. A511.

Evaluating the ***same*** general allegations of customer losses, the ***same*** goodwill write-down, the ***same*** CVS disclosures, and the ***same*** securities laws, courts have unanimously reached the ***same*** conclusion: these claims fail as a matter of law. Every earlier-filed complaint has been dismissed. In New York—considering the ***same*** claims that CVS violated the 1933 Act and Item 303 of Regulation S-K—the New York Appellate Division dismissed "on the law" and held that nothing in CVS's goodwill opinion or risk warnings was misleading in light of the "total mix" of information in CVS's disclosures. *LPF*, 144 N.Y.S.3d at 18. The Rhode Island

2

Superior Court—also confronted with the **same** claims under the 1933 Act and Item 303—held that "Plaintiffs failed as a matter of law to show that CVS made actionable false or misleading statements," A698, and the Rhode Island Supreme Court affirmed, 328 A.3d at 625-26.

The District of Rhode Island—evaluating the **same** allegations lodging claims under a parallel statute, the Securities Exchange Act of 1934 ("1934 Act")—held that "no reasonable investor could have believed that the issues the Plaintiffs claim were omitted did not exist." *Fire Fighters*, 519 F. Supp. 3d at 98. And, in affirming that dismissal, this Court emphasized that even the dire customer losses that plaintiffs alleged had occurred were "entirely consistent with CVS Health's reporting." *Fire Fighters*, 46 F.4th at 32. In fact, considering the **exact same allegations** Plaintiff repeats here—of 33% customer losses, a "come to Jesus" meeting, and supposed "illegal rollover practices," which the *Fire Fighters* plaintiffs copied directly from Plaintiff's complaint—this Court concluded that none pointed to anything that "materially exceeded the losses recognized by CVS Health itself in the pertinent time frames." *Id.* at 37.

It is therefore little surprise that the district court below reached the same conclusion here: that CVS's disclosures were sufficient, and indeed consistent with the customer losses that Plaintiff alleged. Add.009. In an attempt to avoid the many cases that failed before it, Plaintiff now shifts its goodwill theory of liability (the

bulk of its allegations) to the backseat, and focuses on other issues. Plaintiff's arguments on appeal rely primarily on the assertion that the district court supposedly "conflat[ed]" the 1933 Act with the 1934 Act, "contradicts Supreme Court authority distinguishing between the statutes," and "nullif[ies] key attributes" of the statute. Br. 1, 2. In Plaintiff's telling, the district court ignored the possibility that CVS could be liable for omissions under the 1933 Act, and dismissed this case "simply because" *Fire Fighters* "was dismissed." *Id*. at 8.

Plaintiff's assertions fall apart on a plain reading of the district court's analysis. Far from blithely treating *Fire Fighters* as dispositive, the court considered it as "an obvious and instructive guide," Add.003, but conducted a careful review of Plaintiff's complaint under the 1933 Act. In so doing, the court considered supplemental briefing after oral argument on Plaintiff's omission theory under Item 303, and acknowledged that the 1933 Act imposes liability for, among other things, the "***omission of a material fact required to be stated therein***." Add.004 n.1 (emphasis added). It summarized that Plaintiff specified both "statements ***and omissions*** they allege are actionable," Add.006 (emphasis added), and expressly addressed in its decision Plaintiff's theory of "'pure omissions' liability" under Item 303 of Regulation S-K. Add.015. Contrary to Plaintiff's premise on appeal, the district court did not ignore the possibility that Plaintiff could state a claim by pleading an omission—it simply concluded, like the courts before it, that Plaintiff

4

failed to do so because, even taking its allegations as true, CVS's disclosures ***did not*** omit that customer losses had affected the LTC unit.  Add.015.

Plaintiff's other main argument on appeal is that CVS failed to disclose supposedly illegal "rollover practices" in the LTC business that CVS previously acquired.  These "rollover" allegations are themselves copied from a separate lawsuit, *United States ex rel. Bassan v. Omnicare, Inc.*, Case No. 15-04179 (S.D.N.Y.).  And they have no bearing on the goodwill write-down at the centerpiece of Plaintiff's claims.  On the contrary, Plaintiff (and other plaintiffs in parallel cases) copied-and-pasted the allegations to try to distinguish itself from some of the earlier-filed actions, and to distract from the core flaws in its claims.  But, like Plaintiff's other claims, this theory too has been rejected by the other courts.  These allegations were made in both the Rhode Island state-court proceeding alleging violations of the 1933 Act and Item 303, and the proposed amended complaint this Court rejected in *Fire Fighters*.  They bear no relation whatsoever to CVS's goodwill write-down, and each court rejected them.

That is because Plaintiff's argument that CVS should have disclosed more is unavailing under settled law.  CVS disclosed it had received an investigative demand into its "cycle fill process" (what Plaintiff calls "rollovers") and it faced potential future liability from the investigation or from known or unknown future lawsuits.  As the district court correctly found, securities laws do not require more.  Any other

rule would require public companies to accuse themselves of wrongdoing or prejudge the results of legal proceedings. That is not the law.

Plaintiff's arguments on appeal mischaracterize CVS's disclosures, the law, and the court's opinion below. A fair reading of each compels this Court to affirm.

## STATEMENT OF THE CASE

### I.    Factual History

This case concerns disclosures about CVS's LTC business made in the course of CVS's 2018 acquisition of Aetna Inc. On February 9, 2018, CVS filed an amended Registration Statement, which incorporated certain of its annual and quarterly reports (together, the "Offering Documents"). A71-72, A139(¶¶86, 265); *see* A324. The acquisition closed in November 2018. A73(¶91).

### A.    Omnicare Acquisition and Initial Goodwill Assessment

CVS's LTC reporting unit began as Omnicare, a leading provider of pharmaceutical goods and related pharmacy services to long-term care facilities, which CVS acquired in 2015. A56(¶41). CVS combined Omnicare's operations into a "Retail/LTC" business unit alongside CVS's existing retail pharmacies. A55(¶¶37, 40).

After the acquisition closed, CVS performed an annual "goodwill" assessment valuing the LTC business's goodwill at $6.3 billion. A60(¶52). Goodwill aims to estimate the intangible value of an acquired asset and is typically calculated comparing the estimated "fair value" of an asset to the amount for which it was

purchased.  A59(¶49).  It "cannot be measured directly," so accountants use generally accepted accounting principles to "determine ... a reasonable estimate" of an asset's goodwill value post-acquisition.  FASB, Accounting Standards Codification ("ASC") 350-20-35-2.  If the fair value of an asset falls below the book value at which it is recorded on the balance sheet, goodwill is "impaired."  ASC 350-20-35-11; A75-6(¶97).  A company must test for impairment annually, during the same period.  ASC 350-20-35-28.  An additional, interim test is required only if a company concludes that it is more likely than not that an event has caused a reduction in the fair value below its carrying amount.  ASC 350-20-35-30; A62-63(¶59).

## B.     CVS Discloses Challenges and Risks to the LTC Unit

In the years after CVS acquired Omnicare, and before the Aetna acquisition, CVS informed investors about all aspects of its business, including the LTC unit, in its securities disclosures.

### 1.     Goodwill Disclosures

CVS's disclosures contained extensive discussion of its goodwill accounting, including the process it used to conduct, and the results of, its annual goodwill impairment test conducted during the third quarter of each year.  CVS's estimate of fair value used a "combination of a discounted cash flow method and a market multiple method," and "require[d] the Company to make significant assumptions and estimates," including with respect to forecasts of revenue, profit, and cash flow,

7

as well as industry trends, including "the continued efforts of competitors to gain market share." A419.

CVS discussed the results of its annual impairment test for the LTC unit in its 2016 Form 10-K. A459. CVS cautioned that, while the "fair values of our Pharmacy Services and Retail Pharmacy reporting units exceeded their carrying values by significant margins," the same was not true for the LTC unit, which exceeded its carrying value by just 7%. A459. On investor calls, CVS predicted "a challenging year" for the LTC unit. *Fire Fighters*, 46 F.4th at 27.

Plaintiff's claims primarily center on statements made the next year, in the company's 2017 Form 10-K and incorporated by reference into the Offering Materials. As this Court summarized regarding the same time period, CVS's "downward reporting trend continued." *Fire Fighters*, 46 F.4th at 27. In its 2017 Form 10-K, CVS disclosed that the goodwill margin had declined further: the "annual impairment test resulted in the fair value of [the] LTC reporting unit exceeding its carrying value by approximately 1%." A419. CVS went on to discuss in detail why its projections for the LTC unit had declined—namely, that the LTC unit was experiencing several challenges. It explained the "multi-year cash flow projections for our LTC reporting unit have declined from the prior year due to customer reimbursement pressures, industry trends such as lower occupancy rates in skilled nursing facilities, and ***client retention rates***." A419 (emphasis added). CVS

8

then referenced factors underlying its cash flow projections, and explicitly warned

investors of the potential for impairment:

> If we do not achieve our forecasts, given the small excess of fair value over the related carrying value, as well as current market conditions in the healthcare industry, ***it is reasonably possible that the operational performance of the LTC reporting unit could be below our current expectations in the near term and the LTC reporting unit could be deemed to be impaired by a material amount***.

A419 (emphasis added); A145(¶278); *see also Fire Fighters*, 46 F.4th at 27.

### 2.    CVS Warns of Pertinent Risks

In addition to CVS's disclosures outlining the LTC unit's declining financial

projections, and the impact on the unit's goodwill estimate, CVS warned investors

about the broader operational and industry factors affecting the LTC business's

performance. *See, e.g.*, A370-75, A419.  These risk warnings were company-wide,

and applied to CVS Health overall.  But where the LTC unit faced unique risks or

uncertainties, CVS disclosed them.

As relevant here, CVS identified the risks and effects relating to industry

pressures, competition, and client loss, informing investors its "LTC pharmacy

operations have also been affected by ... margin pressures ... including client

demands for lower prices ... and network reimbursement pressure."  A371.  It

cautioned that the LTC market was "highly competitive," and that it might not be

able to compete on pricing or in specific geographies.  A364, A371-72.  CVS

explained that it may lose clients and the corresponding revenue. *See* A374-75; A150(¶287).

CVS also disclosed it was subject to litigation and investigations, and that its business may be adversely affected as a result. A381. It described several ongoing proceedings, including an "Omnicare Cycle Fill Civil Investigative Demand," where Omnicare had "received a Civil Investigative Demand from the United States Attorney's Office for the Southern District of New York requesting information and documents concerning Omnicare's cycle fill process for assisted living facilities." A427. CVS noted that it may be "materially adversely affected" by "pending or future federal or state governmental investigations" or "adverse developments in any pending *qui tam* lawsuit against the Company, whether sealed or unsealed." A430.

CVS's risk warnings also pointed investors to the Management's Discussion and Analysis, which, as discussed above, included specific disclosures regarding its accounting for goodwill, and the factors that could—and had—affected the estimated fair value and projections for the LTC unit. A419.

### C.    CVS Records Goodwill Impairment Charges in 2018 and 2019

CVS's "warnings about the challenges facing the LTC business—including client retention—and the possibility of impairment" continued into 2018. *Fire Fighters*, 46 F.4th at 27. Ultimately, what CVS warned of materialized: "in the second quarter 10-Q issued on August 8, 2018"—still before the Aetna acquisition

closed—"the company reported that it had conducted an interim goodwill test resulting in the impairment of the LTC unit's goodwill to the tune of $3.9 billion." *Id.*; A483.  CVS explained that the LTC unit had updated its 2018 annual forecast, and that there had been "a deterioration in the financial results for the remainder of 2018 and in 2019."  A482; *see* A133(¶247).  Based on these updated forecasts, CVS had determined there were indicators of a goodwill impairment and performed an interim impairment test as of June 30, 2018, resulting in an impairment.  A483; *see* A136(¶247).

CVS explained that the LTC unit faced ongoing operational difficulties.  *See* A145(¶278).  It reiterated challenges from prior disclosures, including client retention issues, and identified additional headwinds, cautioning that goodwill could become further impaired.  A511.  After further, repeated warnings, CVS announced a further goodwill impairment charge related to the LTC unit in February 2019.  A133(¶256).

## II.     Prior Cases and Procedural History

CVS's February 2019 goodwill write-down set off a race to the courthouse. Ultimately, six similar lawsuits were filed by the same or overlapping putative classes of shareholders, involving the same securities disclosures and the same allegations of false and misleading statements or omissions.  This action is the last of the six; every action before it has been dismissed with prejudice.

11

### A.    The District Court Dismisses *Fire Fighters*, and this Court Affirms

In February 2019—six months before Plaintiff initiated this lawsuit—a different plaintiff filed what would become *Fire Fighters*, No. 19-cv-437 (D.R.I). Considering the same disclosures and the same allegations at issue here, brought under a parallel statute, the district court dismissed, and this Court affirmed.

The *Fire Fighters* plaintiffs asserted that CVS's goodwill and other disclosures were false or misleading under the 1934 Act. All of the statements from CVS's securities filings that Plaintiff challenges here were at issue in *Fire Fighters*. There, as here, the plaintiffs alleged that the LTC business "hemorrhaged" customers after the Omnicare acquisition, and "CVS Health misleadingly concealed these customer losses and their causes." *Fire Fighters*, 46 F.4th at 26. There, as here, plaintiffs asserted that the "disclosure[s] of difficulties with the LTC business and write-downs of goodwill came too late," and "misled investors by either affirmatively misrepresenting or omitting material facts." *Id.* at 27. They also asserted that "the company's 'boilerplate' statements of risks facing the LTC business ... misleadingly purported to alert investors to only future risks that were, in fact, 'already occurring.'" *Id.* at 28; *see generally* Am. Compl., *Fire Fighters*, Case No. 19-cv-00437, ECF No. 38 ("FF Compl.").

Defendants moved to dismiss, and the district court granted the motion. The district court rejected plaintiffs' theory that CVS's disclosures failed to disclose

customer losses, or disclosed them inadequately. *Fire Fighters*, 519 F. Supp. 3d at 86. Even crediting plaintiffs' allegations that the LTC business was "suffering significant customer loss" and "losing customers in large numbers," *id.* at 90, 93, the court concluded that none of CVS's disclosures was false or misleading because the company disclosed issues with "customer retention," and "was under no obligation to spell out the extent of customer retention difficulties." *Id.* at 94. In sum, "[t]here [was] nothing directly inconsistent, at least not in a substantial way, between the statements [CVS] made and the loss of customers sustained." *Id.* The court also observed that the plaintiffs' "retrospective disagreement with CVS's judgement" about goodwill was not actionable as a matter of law. *Id.* at 97. Thus, in light of CVS's disclosures, "no reasonable investor could have believed that the issues the Plaintiffs claim were omitted did not exist." *Id.* at 98.

After dismissal, the plaintiffs proffered a second amended complaint that they asserted cured the deficiencies in their pleading. The proposed amended complaint copied allegations from the complaint in ***this*** action. *See* Proposed Second Am. Compl. Redline, *Fire Fighters*, ECF No. 81-4 ("FF PSAC"), at 1. In fact, the proposed amended complaint in *Fire Fighters* incorporated the ***same*** allegations that Plaintiff here highlights in its brief regarding customer losses. *Compare* FF PSAC ¶¶185, 190 (alleging loss of "25%-33% of [LTC] business in the 2016-to-2017 timeframe," meetings on customer losses, etc.) *with* Br. at 12-14, 32, 42, 44, 46

13

(same).  The proposed complaint also added a section echoing the allegations of "illegal rollover practices"—copied from Plaintiff here, which in turn copied them from a different lawsuit.  *See* FF PSAC ¶¶260-84.  The district court denied the proposed amendment.  *Fire Fighters*, 541 F. Supp. 3d 231, 234-35 (D.R.I. 2021).

This Court affirmed the dismissal, concluding that "the district court's assessment was on the mark."  *Fire Fighters*, 46 F.4th at 26.  This Court noted that plaintiffs alleged a wide array of customer losses based on various confidential-witness accounts.  *Id.* at 29.  Nevertheless, it concluded that the complaint "fail[ed] to allege sufficiently specific facts" to show that "any of defendants' alleged misstatements contradicted the state of that business as it then stood."  *Id.* at 31.  This Court therefore "agree[d] with the district court" that the complaint failed to state a claim.  *Id.* at 35.

In particular, the Court observed that the allegations of customer losses—even significant losses—in 2016 and 2017 were "consistent with the general negative trend" evident from CVS's disclosures.  *Fire Fighters*, 46 F.4th at 32.  Indeed, the LTC unit declined in fair value from 7% above impairment to just 1% above impairment in 2016, and CVS had explained "in 2017 that issues with 'client retention rates' contributed to declining revenues in the prior year."  *Id.*  Given CVS's disclosures, the Court held that plaintiffs needed to point to more than "pockets of customer loss that may very well have been entirely consistent with the

reported goodwill diminution." *Id.* at 33. Plaintiffs' failure to "establish a reasonably clear timeline of customer losses inconsistent with the company's goodwill disclosures is representative of the complaint's overarching failure to allege material facts inconsistent with defendants' public statements." *Id.* at 33. In other words, although plaintiffs alleged customer losses throughout the time period—including allegations of substantial customer losses in 2016 and 2017, before the February 2018 filings at issue in both *Fire Fighters* and here—none of those losses were inconsistent with CVS's statements about the diminishing value of the LTC unit due to (among other things) "client retention rates." *Id.* at 32.

This Court also affirmed the district court's denial of plaintiffs' motion for reconsideration on leave to amend. This Court scrutinized allegations from the proposed amended complaint—allegations copied ***verbatim*** from the complaint here, including allegations of a "come to Jesus" meeting before Thanksgiving 2016, a loss of "25-33% of business" in the "2016-to-2017 timeframe," and the copy-and-pasted allegations of "illegal rollover practices"—and concluded there were "no new allegations ... that would connect defendants' public statements with contradictory contemporaneous facts or would demonstrate that the further anecdotal losses ... materially exceeded the losses recognized by CVS Health itself in the pertinent time frames." *Id.* at 37. In other words, even taking the additional allegations of customer losses, internal meetings, and alleged rollovers into account, CVS disclosed all the

15

relevant facts and trends to the market when it disclosed that the LTC unit had gone from 7% above impairment in late 2016 to approximately 1% above impairment by late 2017, and could become materially impaired in the near future.

### B. The Rhode Island and New York State Courts Dismiss Similar 1933 Act Cases

The *Fire Fighters* suit was followed quickly by four class action complaints in state courts, which were consolidated into two actions—one in each of New York and Rhode Island—alleging the exact same 1933 Act and Regulation S-K claims alleged here, and filed on behalf of virtually identical putative classes. All have been dismissed.

#### 1. New York: *LPF*

Like the complaints in *Fire Fighters* and here, *LPF* alleged that CVS's statements regarding its LTC-related goodwill and performance, in the same Offering Documents here, violated the 1933 Act and SEC regulations, including Items 105 and 303 of Regulation S-K. *LPF* alleged, among other things, that Omnicare had lost "25 percent of its LTC customers," *LPF* Complaint, Index No. 651700/2019, NYSCEF No. 1 ("LPF Compl.") ¶¶13, 41, and that, by the time of the Offering materials, the LTC unit "had already significantly deteriorated to a point where a material impact to CVS's business had already occurred," *id.* ¶¶16, 71. For these and other reasons, *LPF* contended that CVS's disclosures violated Item 303 by "fail[ing] to disclose" facts regarding customer losses. *Id.* ¶¶64–66; *see also id.* ¶101

(alleging CVS "omitted to state material facts" required by law).  *LPF* further asserted that CVS's statements were misleading because CVS portrayed risks as "potential" when they had "actually occurred."  *Id.* ¶¶76, 78, 80.

Although New York's trial-level court initially allowed the case to proceed, the Appellate Division "unanimously reversed, on the law" and dismissed the case. *LPF*, 144 N.Y.S.3d at 17.  The Appellate Division analyzed the same goodwill disclosures at issue here and concluded that the complaint stated no cognizable claim under the 1933 Act because LPF had not identified any false or misleading "embedded facts in the opinion on goodwill," nor that the "stated methodology was not followed."  *Id.*  Further, the court held that plaintiffs had not stated a claim regarding CVS's risk warnings, because, "[i]n reviewing the registration statement as a whole, the fact that defendants' risk disclosures identified the risk as contingent rather than actual did not render the registration statement misleading, in light of the 'total mix' of information."  *Id.* (citation omitted).

## 2.    Rhode Island:  *In re CVS Health Corporation Securities Act Litigation*

Just like *LPF* and the suit here, the Rhode Island complaint alleged that CVS's disclosures violated the 1933 Act, including Regulation S-K (Items 105 and 303). After the *Fire Fighters* and *LPF* complaints were dismissed, the Rhode Island state-court plaintiffs filed a revised amended consolidated complaint in an effort to secure a different result from the cases that came before.  This, too, failed.

17

Like all of the other cases, the Rhode Island plaintiffs alleged that CVS had omitted necessary information from its disclosures: namely, the LTC unit's goodwill was "substantially impaired" due to customer losses by the time of the Registration Statement. Revised Amended Consolidated Complaint, No. PC-2019-5658 (Sept. 8, 2021) ("RI Compl.") ¶13. The complaint relied on similar allegations of negative business and industry trends, as well as customer losses, importing already-rejected confidential witness allegations from *Fire Fighters*. Plaintiffs also added the same copy-and-pasted allegations of "illegal rollover practices," which they took from the complaint in this case. *See, e.g.*, *id.* ¶¶75, 83. It also alleged that CVS's goodwill reporting failed to comply with GAAP, that its risk warnings were misleading because CVS "purported to warn of numerous risks that 'if' occurring 'may' or 'could' adversely affect the Company while failing to disclose that these very 'risks' ha[d] already materialized," and that CVS's disclosures violated Regulation S-K for omitting material trends, uncertainties, and risks. *Id.* ¶¶ 125, 130-36.

The Rhode Island Superior Court dismissed the case. The plaintiffs' efforts to distinguish themselves from the prior, unsuccessful cases—the ***same*** arguments Plaintiff here raises on appeal, including on pleading standards, 1934 Act vs. 1933 Act, Regulation S-K, and GAAP accounting—were unavailing. *In re CVS Health Corp. Sec. Litig.*, PC-2019-5658 (R.I. Super. Ct. Feb. 20, 2023) (A692-99). The court determined that prior decisions already persuasively disposed of plaintiff's

claims "with respect to the existence of alleged false or misleading statements" in CVS's disclosures, and that the purportedly new allegations in the complaint "raise a distinction without a difference," as they were "merely derivatives of their substantive allegations of false or misleading statements." A695. Specifically with respect to Regulation S-K (Item 303), the New York Appellate Division "already dispensed with this allegation," and as to plaintiffs' allegations that CVS violated GAAP in conducting its impairment testing, "Plaintiffs' arguments are merely a restyling of already-made allegations that CVS misleadingly delayed a goodwill impairment test." A696.

Given these similarities, the Rhode Island Superior Court dismissed on multiple grounds, including collateral estoppel. On the merits, "[w]ith respect to the ultimate issue as to whether CVS made false or misleading statements in its public securities documents," the court adopted the reasoning and findings of the *Fire Fighters* and *LPF* courts and held that "Plaintiffs failed as a matter of law to show that CVS made actionable false or misleading statements." A698.

The plaintiffs appealed only the collateral-estoppel holding. As the Rhode Island Supreme Court recognized, the superior court had also rejected on the merits plaintiffs' allegations that CVS had omitted information under the 1933 Act and Item 303, failed to adhere to GAAP, or made "multiple material misstatements and omissions" or "breache[d] [its] duty to disclose information to related to [its]

goodwill," and those holdings remained unchallenged. *In re CVS Health Corp. Sec. Litig.*, 328 A.3d at 624. Given plaintiffs' failure to appeal these holdings, the court affirmed dismissal.

### C.    The District Court Dismisses Plaintiff's Complaint

This case was the sixth, and final, substantially-similar action to be filed. After the initial complaint was filed on August 15, 2019, Plaintiff filed a consolidated complaint in September 2020. Defendants moved to dismiss or stay given the already-pending, substantially similar cases, which by then had yet to be dismissed. The district court agreed, ultimately staying the case "because of [*Fire Fighters'*] likely impact." Add.003.

After this Court affirmed the *Fire Fighters* dismissal, Plaintiff prepared yet another amended complaint in light of this Court's decision, which Plaintiff conceded was plainly "related." A38. Indeed, although Plaintiff now faults the district court below for relying on *Fire Fighters* as guidance, it previously emphasized that it wanted to "conform the pleadings to address the First Circuit's guidance" in *Fire Fighters*. A40. Nevertheless, Plaintiff's amended complaint rehashed the same allegations and legal theories as in the prior, dismissed actions, and the district court broke no new ground in dismissing it. Like those before it, Plaintiff alleges that CVS's statements about its goodwill opinion were false or misleading because, by the time of the Offering Documents, the LTC unit's goodwill

was "materially impaired." *Compare* A73(¶92), *with* FF Compl. ¶301 ("already substantially impaired"), LPF Compl. ¶71 ("impairment had already occurred"), and RI Compl. ¶13 ("goodwill allocated to the LTC reporting unit was substantially impaired"). In particular, like prior suits, Plaintiff alleged that "during 2016 and 2017, the Company's Long-Term Care business was experiencing a highly material loss of customers and significant revenue shortfalls," A77(¶102), and cited confidential witnesses alleging large customer losses during this period. *See* A78(¶¶103-04).

Plaintiff further alleges that CVS omitted information required under Item 303 of Regulation S-K, just as the New York and Rhode Island plaintiffs did, LPF Compl. ¶¶64-5; RI Compl. ¶¶130-36, relying primarily on allegations about customer losses and prescription rollover practices offered in prior cases. *Compare* A49(¶14) (alleging 25-33% customer losses and "come to Jesus" meeting) *with* FF PSAC ¶¶185, 190 (same); *see also* LPF Compl. ¶3 (alleging customer losses), RI Compl. ¶¶ 52-82 (same); A50-1(¶¶17-19) (alleging "illegal rollover practices") *with* FF PSAC ¶¶260-84 (same) *and* RI Compl. ¶¶83-93 (same). Plaintiff also alleges that CVS's risk warnings were misleading (like in *LPF*, *In re CVS*, and *Fire Fighters*) and that the Offering Documents falsely suggested CVS had complied with GAAP in its goodwill accounting (like in *LPF* and *In re CVS*).

Defendants again moved to dismiss.  At argument, Plaintiff emphasized that it could succeed on a "pure omission" theory under Item 303, which had been amply briefed.  A761-62.  In light of Plaintiff's repeated reliance at argument on *Macquarie Infrastructure Corp. v. Moab Partners*, 601 U.S. 257 (2024), the court allowed further briefing specifically on *Macquarie* and its relation to Plaintiff's "pure omission" theory.  A726-38 (letter briefs).

The district court ultimately rejected Plaintiff's arguments and dismissed with prejudice.  Recognizing the "common themes" cutting across this case and *Fire Fighters*, the court found this Court's opinion "an obvious and instructive guide." Add.003.  It nevertheless reviewed the complaint and found it "wanting" in its own right.  Add.003.  The court recognized that this case and *Fire Fighters* "share ... overall themes," including that "the Omnicare customer base was in fact hemorrhaging," and "CVS's failure to write-down the Omnicare goodwill contemporaneously with the loss of its value presented a misleadingly positive picture."  Add.007.

Just as in *Fire Fighters*, "a close examination of the Amended Complaint here reveals the same absence of direct inconsistencies between CVS's performance and its representations."  Add.009.  The district court catalogued many of Plaintiff's allegations of customer loss—including allegations of "a loss of 25% of the business in 'spring 2017'" and "a loss of 80,000 – 90,000 beds"—and concluded (like this

Court before it) that they did not suffice to allege that any of CVS's disclosures were misleading or omitted required information.  Again, like *Fire Fighters*, Plaintiff's complaint "fails to allege sufficiently specific facts about the state of the LTC business at particular points in time to enable [the court] to conclude that any of the goodwill write-downs were too late or that any of defendants' alleged misstatements contradicted the state of that business as it then stood."  Add.014 (quoting *Fire Fighters*, 46 F.4th at 31).  Further, with respect to the rollover allegations, "the Amended Complaint does not provide any basis for believing that," at the time of the disclosures, the investigation into rollovers "would or had turned into sanctions that threatened CVS Health's continuing business or revenue."  Add.013.

Below, just like the plaintiffs in Rhode Island state court, Plaintiff argued that *Fire Fighters* did not inform the analysis here because that case arose under the 1934 Act, rather than the 1933 Act.  The district court rejected this argument, finding that "the element that both the Amended Complaint and the [*Fire Fighters*] complaint insufficiently pled is common to" both the 1933 and the 1934 Acts:  the claims fail because "there are insufficient facts pled to show [CVS's disclosures] were false or misleading **when made**."  Add.005.

The district court acknowledged the two statutes differ, but "they are differences without a distinction under the circumstances here."  Add.005.  The court acknowledged that the primary difference is that the 1934 Act includes an element

of scienter, while the 1933 Act does not.  But the court explained why this didn't change the result:  in *Fire Fighters*, the court "did not find that the **fraud** or **scienter** allegations were insufficiently pled."  Add.008; Add.009.  "Instead, [it] found the evidence insufficient to show falsity or misleading content," so "neither this Court's decision, nor the Circuit's that affirmed it, turned on an allegation of fraud or was a consequence of a heightened standard of pleading."  Add.008.  Rather, "the [*Fire Fighters*] complaint failed under Rule 12(b)(6) because of its 'overarching failure to allege material facts inconsistent with defendants' public statements.'"  Add.009 (quoting *Fire Fighters*, 46 F.4th at 33).

The court also considered and rejected Plaintiff's argument that CVS was liable for "pure omissions" under Item 303 of Regulation S-K.  Add.015.  Recognizing that Plaintiff alleged that CVS omitted information, and that the law created liability for omissions, Add.004, Add.006, the court held that "this is not a pure omission case" because "[t]he facts as pled ... advance a theory that CVS's statements were misleading, but that it did make disclosures on the topics the plaintiffs' claims challenge."  Add.015.  Because the court had already concluded that none of Plaintiff's allegations about customer losses or litigation risks were inconsistent with what CVS disclosed, the district court granted Defendants' motions and dismissed the case.

This appeal followed.

## SUMMARY OF ARGUMENT

In the Offering Materials, CVS disclosed the challenges the LTC unit faced, including client retention issues, and warned of a potential of future impairment in the near term.  It also disclosed the then-existing status of the "rollover" investigation.  The district court therefore correctly dismissed Plaintiff's claims, because Plaintiff's allegations are consistent with CVS's disclosures, and the law did not obligate CVS to disclose more, or use the terms that Plaintiff, with the benefit of hindsight, would now prefer.

In the face of the many dismissals of similar (or identical) claims premised on the same disclosures, on appeal Plaintiff now runs away from CVS's disclosures, and argues primarily that the district court ignored its "omissions" theory, or that Item 303 required CVS to disclose more.  Each has already been rejected by prior courts, and that is because both fail under established law.  The district court correctly recognized that liability could arise from omissions—but here, because CVS had disclosed customer losses and their impact on the business, as well as the rollover investigation, there was no omission.  Ample case law confirms that CVS's disclosures here do not give rise to liability based on Plaintiff's hindsight-driven assessments or hyperbolic characterizations, because a plaintiff is not entitled to its preferred characterization of any risks or trends the company discloses.

Plaintiff's other arguments that CVS's statements on goodwill, its compliance with GAAP, and its risk warnings similarly fail under settled law. Indeed, each has been rejected many times over by prior courts evaluating the same disclosures, including this Court in *Fire Fighters*. And Plaintiff's Section 14 claims, raised as an afterthought, fail in the absence of any false or misleading statements as well.

For all these reasons, the judgment should be affirmed.

## ARGUMENT

### I.    The District Court Correctly Ruled That CVS's Statements Were Not False or Misleading Because CVS's Disclosures Were Sufficient.

In the decision below, the court correctly applied settled law to hold that CVS disclosed what it was required to disclose, under the 1933 Act and Item 303. Even crediting the complaint's allegations that the LTC unit was experiencing customer losses, the court found that Plaintiff had not alleged any losses that were not "entirely consistent with CVS Health's reporting," which acknowledged customer retention issues year-over-year that affected the LTC unit's value and caused a risk of future goodwill impairment. Add.010 (quoting *Fire Fighters*, 46 F.4th at 32).

#### A.    CVS Adequately Disclosed Customer Losses

Plaintiff's central argument is that it "plausibly pled" that "Defendants knew about but did not disclose" "substantial business loss." Br. 32. As the district court correctly held, this argument fails when judged against CVS's actual, contemporaneous disclosures. CVS explicitly warned investors that the LTC unit's

26

estimated value had already been affected by several negative business trends, including customer losses. It advised after the 2015 acquisition, the LTC unit's fair value exceeded its carrying value by a significant margin; it disclosed in 2016 that the unit's value had dropped, exceeding its carrying value by only 7%; and in 2017 CVS disclosed that the unit's value dropped again to exceed its carrying value by 1%. A482; A419. In 2017, CVS went on to explain that the "multi-year cash flow projections for our LTC reporting unit have declined from the prior year due to," among other factors, "client retention rates." A419.

Each court to examine the *same* CVS disclosures has concluded, like the court below, that "no reasonable investor could have believed that the issues the Plaintiffs claim were omitted did not exist," *Fire Fighters*, 519 F. Supp. 3d at 98. This includes two prior 1933 Act cases, where plaintiffs alleged (like Plaintiff here) that CVS supposedly omitted disclosures that were required under Item 303. *See LPF*, 144 N.Y.S.3d at 17-18; *see also* A695-96 (RI opinion).

Neither Item 303 nor any other authority requires more. "[A]s long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Here, CVS cautioned that the LTC unit had been affected by client retention issues year-over-year and that, if those issues continued, it was "reasonably possible that ... the LTC

reporting unit could be deemed to be impaired by a material amount." A419. And, as this Court held, these and other plaintiffs' allegations of customer losses in 2016 and 2017 are wholly "consistent with the general negative trend of CVS Health's goodwill write-offs beginning in 2016 and its statement in 2017 that issues with 'client retention rates' contributed to declining revenues in the prior year." *Fire Fighters*, 46 F.4th at 32.

Plaintiff's arguments to try to distinguish its claims from all that failed before them are unpersuasive. First, Plaintiff suggests that a distinguishing factor is that CVS's statements about customer losses here must be assessed at "just one point in time: mid-February, 2018," so this complaint succeeds where *Fire Fighters* failed. Br. 8. In support, Plaintiff highlights "specific allegations of 25-33% business loss" by that time, pointing to allegations that CVS was losing customers during 2016 and 2017. Br. 8; *see also* A77-78 (summarizing allegations of losses "during 2016 and 2017").

This is a red herring. Every prior case involved allegations that, by the time of CVS's disclosure of its goodwill test **in February 2018**, goodwill was supposedly already impaired due to customer losses that occurred in 2016 and 2017. But, as explained above, CVS disclosed throughout that period that the LTC unit's value was declining due to (among other things) customer losses, so every court has held CVS's disclosures inactionable in the face of such allegations. *See supra*, pp. 11-

20.  At most, Plaintiff has alleged—just as in earlier cases—that CVS was suffering customer losses that had reduced the value of the LTC unit.  But that is what CVS disclosed.  Thus, as the court below observed, a "close examination of the Amended Complaint here reveals the same absence of direct inconsistencies between CVS's performance and its representations that would support a conclusion of falsity." Add.009.  Plaintiff's claims therefore fail for the same reason as in *Fire Fighters* (and the prior 1933 Act cases)—even taking Plaintiff's allegations as true, they are not "inconsistent with [CVS's] public statements" at any point, including as of February 2018.  *Fire Fighters*, 46 F.4th at 33.

Plaintiff also posits that the "client retention" problems should have been disclosed differently.  Br. 38.  This, too, has been argued and rejected in the prior suits, because it is a fundamental misstatement of securities law.  As this and the other Circuits have held, a "defendant does not have a duty to cast the descriptions of its business in the most negative light."  *Corban v. Sarepta Therapeutics, Inc.*, 2015 WL 1505693, at *6 (D. Mass. Mar. 31, 2015) (quoting *Coyne v. Metabolix, Inc.,* 943 F. Supp. 2d 259, 269 (D. Mass. 2013)), *aff'd*, 868 F.3d 31 (1st Cir. 2017); *Dalberth v. Xerox Corp.*, 766 F.3d 172, 186–87, 188 (2d Cir. 2014) ("[c]orporations are not required to phrase disclosures in pejorative terms" or "with specific adjectives"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) ("no duty to cast its business in a pejorative, rather than a positive, light"); *Kowal v. MCI*

*Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994) (affirming dismissal where "plaintiffs' allegations called for pejorative characterizations of disclosed factual matters"). Thus, this Court holds that a statement is not misleading merely because a company "failed to characterize explicitly [a] risk ... as serious." *Hill v. Gozani*, 638 F.3d 40, 62 (1st Cir. 2011); *see also Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (rejecting claim that it was "misleading not to report the number of sales, or that they were below expectations").

On the contrary, "once a company discloses 'material objective factual matters, it need not characterize or editorialize on those facts in any particular way.'" *In re MGT Cap. Invs., Inc. Sec. Litig.*, 2018 WL 1224945, at *11 (S.D.N.Y. Feb. 27, 2018) (collecting cases). For this reason, CVS's repeated warnings were not false or misleading because they disclosed that "client retention rates"—instead of Plaintiff's hyperbolic characterizations—were negatively affecting the LTC unit. *See, e.g.*, *Wu v. Stomber*, 883 F. Supp. 2d 233, 261 (D.D.C. 2012) ("[T]hat defendants did not use the specific terminology preferred by plaintiffs does not mean the disclosures were misleading."), *aff'd*, 750 F,3d 944 (D.C. Cir. 2014); *SRM Glob. Fund L.P. v. Countrywide Fin. Corp.*, 2010 WL 2473595, at *8 (S.D.N.Y. June 17, 2010) (similar), *aff'd*, 448 F. App'x 116 (2d Cir. 2011).

True enough, as Plaintiff notes (Br. 18), CVS disclosed some countervailing trends in the LTC unit, like the expected future script growth from senior living, or

potential benefits from future bolt-on acquisitions, that CVS hoped would offset customer losses. A419; A532. But Plaintiff has not alleged that these countervailing trends did not exist, or that CVS's statements about them were false. Although they ultimately did not overcome the negative factors CVS identified, CVS warned of that possibility. A419. That the warned-of impairment came to pass does not make CVS liable, "even if the company looks foolish in hindsight for not properly predicting whatever harm befell it.'" *Fire Fighters*, 46 F.4th at 35 (citation omitted).

## B. CVS Adequately Disclosed The "Rollover" Investigation

Plaintiff's other primary argument on appeal is that CVS omitted necessary disclosures of "illegal rollover practices." Br. 32, 33. These allegations—copied from an unrelated case—are a tacked-on gambit to survive where some of the earlier-filed other complaints failed. They are entirely unrelated to CVS's goodwill impairment. Indeed, both the Rhode Island Superior Court and this Court reviewed and rejected the exact same "rollover" allegations. And for good reason: here, too, Plaintiff's arguments fail in the face of CVS's disclosures and settled securities law.

CVS's disclosed that it was subject to litigation, investigations, and other inquiries, that its business may be adversely affected as a result, A430, and listed a selection of ongoing legal proceedings involving the company, A425-30, including an investigation into Omnicare's cycle fill process, A427. CVS noted that it could be "materially adversely affected" by "pending or future federal or state

31

governmental investigations" or "adverse developments in any pending *qui tam* lawsuit against the Company, whether sealed or unsealed." A430.

As of February 2018—the date of the Offering Materials—the *qui tam* complaint was sealed even as to CVS, as required for *qui tam* suits. *See* 31 U.S.C. § 3730. The suit was not unsealed until almost two years later, in December 2019, A112(¶193), well after CVS's write-down of goodwill and relevant time period for this case. Plaintiff acknowledges that the relevant time here is "mid-February, 2018," Br. 8, and at that point, CVS disclosed what securities laws required: that it was under investigation, and the investigation could affect it in the future.

At most, Plaintiff asserts that rollovers represented "undisclosed conduct that exposed CVS to such sanctions," and that the business's "revenues were inflated" as a result. Br. 50, 42. But Plaintiff's argument would turn every potential impropriety into a disclosable event. For obvious reasons, courts reject this rule, and routinely hold that "the federal securities laws do not require a company to accuse itself of wrongdoing." *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), *aff'd*, 165 F. App'x 928 (2d Cir. 2006). On the contrary, "[d]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (internal quotation marks omitted) (affirming dismissal of 1933 Act claims). As a "corollary" to this general

rule, a company's financial statements do not "automatically become misleading by virtue of the company's nondisclosure of suspected misconduct that may have contributed to the financial results." *Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853, at *3 (2d Cir. Dec. 13, 2022) (affirming dismissal of 1933 and 1934 Act claims) (citation omitted).

Thus, in *City of Pontiac v. UBS*, the court rejected the plaintiffs' argument that, "in addition to disclosing the existence of an investigation, defendants were required to disclose that [the company] was, in fact, engaged in ... ongoing [wrongdoing]." 752 F.3d at 184. It held instead that, by disclosing ongoing government investigations and the possibility of future liability, "UBS complied with its disclosure obligations," including under Regulation S-K. *Id.*[1] And in *AT&T Inc.*, the court held that AT&T did not make an actionable misstatement by reporting

---

[1] Plaintiff briefly (at 39 n.7) attempts to distinguish *UBS*, but its arguments prove Defendants' point. It argues that in *UBS*, the bank disclosed its "involvement in multiple legal proceedings and government investigations and indicated that its involvement could expose UBS to substantial monetary damages and legal defense costs." Br. 39 n.7. That's what CVS disclosed, too: that it was "a party to legal proceedings, investigations, and claims," A425, including the rollover investigation, A427. It also noted that it was subject to a variety of laws, and "[p]otential sanctions for violating these laws include ... civil penalties [and] multiple damages," as well as other measures. A366. Although Plaintiff also notes that the disclosures in UBS "described how one witness was detained and another indicted, showing the seriousness of the investigation," Br. 39 n.7, Plaintiff does not allege that anything comparable happened here that would require additional disclosure.

subscriber growth, even where those numbers "were allegedly artificially inflated by ghost accounts."  2022 WL 17587853, at *3.

The same is true here—Plaintiff's "rollover" theory rests on the notion that CVS was required to accuse itself of misconduct, and apparently (in Plaintiff's view) adjust its financial statements to account for conduct that might ***later*** be deemed unlawful.  That is not the law.  *See, e.g.*, *Fogel v. Vega*, 759 F. App'x 18, 24 (2d Cir. 2018) (Financial statements do not "become actionable simply because companies do not simultaneously disclose some wrongdoing that may have contributed to the company's financial performance"); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d at 377 ("[F]ailure to disclose that revenues were derived from 'unsustainable and illegitimate sources'" did not violate securities laws because "the federal securities laws do not require a company to accuse itself of wrongdoing.").

Plaintiff's arguments otherwise are unavailing.  Plaintiff first suggests CVS "did not disclose the rollover practices at all, a clear Item 303 violation."  Br. 38.  This is untrue, as explained above, because CVS disclosed the ongoing investigation, and was not required to do any more—including speculating that its practices may later be challenged in litigation.  Although Plaintiff eventually admits that CVS ***did*** disclose the investigation, it argues the "rote disclosure did not discuss the nature of the issue—let alone identify it as part of an ongoing trend or disclose its materiality."  Br. 39.  But this is circular; if Plaintiff means that CVS was obligated to conclude

that the "rollover" practices were "illegal," even though such a finding had not been made, that is not the law. *See supra*, pp. 32-34. Nor could (or should) CVS have speculated about the possible financial impact these practices might have on its revenue, especially in the absence of any finding of wrongdoing: "accurately reported financial statements do not automatically become misleading by virtue of the company's nondisclosure of suspected misconduct that may have contributed to the financial results." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98-99 (2d Cir. 2021).

Plaintiff also claims that courts "routinely uphold Item 303 allegations where the omitted information involved 'uncharged' conduct." Br. 35. This is incorrect. Rather, courts reject such theories under securities laws, including Item 303. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 20, 24 (S.D.N.Y. 2016) ("An SEC investigation could not be characterized as a 'known trend' or 'uncertainty' under Item 303."); *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 168 (S.D.N.Y. 2018) (reading Item 303 "to impose a duty to disclose uncharged, unadjudicated wrongdoing" would "'stretch[] the language of 303 beyond its legitimate scope'").

Plaintiff's cases are not to the contrary—although Plaintiff claims each is about "uncharged" conduct, none arose in the context of government investigations or potential liability, but dealt only with ordinary business risks. As Plaintiff itself

summarizes, Br. 35, *Silverstrand Investments v. AMAG Pharmaceuticals*, 707 F.3d 95, 105 (1st Cir. 2013), dealt with "adverse side effects of drugs," *Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012), concerned "microchip defects," and *Litwin v. Blackstone Group*, 634 F.3d 706 (2d Cir. 2011), involved a "downturn in the real estate market."  None involved disputed legal issues or alleged legal wrongdoing; a critical distinction, because securities law treats investigations and potential legal liability ***differently*** from ordinary business risks, rejecting any requirement that a company predetermine the result of an ongoing legal case or investigation, or preemptively accuse itself of wrongdoing.  *City of Pontiac*, 752 F.3d at 184; *supra*, pp. 32-34.

### C.    The District Court Correctly Applied The 1933 Act's Standards, Including The Possibility of Liability For Omissions.

Undergirding Plaintiff's arguments about customer losses and rollovers is the argument that the district court erred by "contradict[ing] precedent holding that ... the Securities Act provides liability for a pure omission of information that must be disclosed under Item 303 of Regulation S-K."  Br. 2.  But the district court perfectly understood—and acknowledged—this potential basis for liability.  It simply rejected it, like all the cases that came before, because CVS did not fail to disclose anything required.  *See LPF*, 144 N.Y.S.3d at 17-18 (rejecting claim that risk warnings were deficient); A695 (Rhode Island court rejecting claim under Item 303); *see also Fire*

*Fighters*, 46 F.4th at 33-35 (rejecting claim that CVS's goodwill or risk warnings failed to disclose customer losses).

Courts routinely reject claims, like Plaintiff's, premised on the idea that risks were "omitted" because they should have been phrased differently or disclosed more overtly. Indeed, Plaintiff admits that CVS **did** disclose customer losses, but shrug those statements off as "conditional" or that they "minimized problems." Br. 37, 38. This is effectively an argument that disclosures were misleading or deceptive—not allegations that CVS omitted the disclosure entirely. Item 303, like the rest of federal securities law, does not entitle a plaintiff to disclosures using his preferred wording. *See supra*, pp. 29-30. If a company fails **entirely** to disclose something required by Item 303, a plaintiff may have a claim. But when a company **has** made a disclosure on the topic, courts will not line-edit, pick-apart, or second-guess the wording. *See, e.g.*, *Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 33-34 (1st Cir. 2020) (holding that company "adequately disclosed the claimed risk or uncertainty" under Item 303, even though plaintiffs disputed the adequacy of company's wording); *see also Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39 (2d Cir. 2017) (no Item 303 violation when "registration statement included ample warning that its business could be affected" by trend plaintiff identified); *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, 2017 WL 4403314, at *19 (S.D.N.Y. Sept. 30, 2017) (disclosure that business faced "substantial and increasingly intense competition for

37

partner relationships" adequate under Item 303), *aff'd*, 773 F. App'x 630 (2d Cir. 2019).

Plaintiff's own authorities agree.  Plaintiff relies repeatedly on *Silverstrand Investments*, to argue that courts allow "Item 303 pure omissions claims absent any affirmative misstatement," Br. 7.  That is true, but irrelevant, because CVS **did** disclose the risks that Plaintiff alleges.  In contrast, in *Silverstand*, the defendant "entirely depended on [the] commercial success" of a single, "make-or-break" drug. 707 F.3d at 97, 103.  Despite that, the company failed entirely to disclose that the drug had resulted in severe adverse events, including "a death, two life-threatening reactions, and fourteen hospitalizations." *Id.* at 103-04.  In other words, the company was silent as to known issues regarding the drug.  This silence, in the face of Item 303's requirement, is what both Plaintiff and courts call "pure omissions."  *See* Add.015.  Here, far from being silent about the issues Plaintiff raises, CVS disclosed them—Plaintiff merely takes issue with the specificity or adequacy of CVS's disclosures.

Plaintiff's mantra-like reliance (at 2, 6, 7, 23, 26, 29, 30) on *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), also attempted below, is irrelevant for much the same reason.  There, the Supreme Court noted the 1933 Act can give rise to liability for "pure omission":  "when a speaker says nothing," as opposed to when a speaker makes a "[h]alf-truth[]," or "omit[s] critical

qualifying information." 601 U.S. 263. But *Macquarie* did not change the law under the 1933 Act, which has **always** recognized that pure omissions can render a defendant liable under the 1933 Act. Plaintiff's heavy reliance on *Silverstrand*, which predated *Macquarie*, confirms that obvious point. *See Silverstrand*, 707 F.3d at 102 (acknowledging that the 1933 Act prohibits omissions, including under Item 303).

Here, however there was no "pure omission" at all—Plaintiff's theory is that CVS disclosed "[h]alf-truth[s]," "omit[ed] critical qualifying information," or failed to characterize risks as direly as Plaintiff would prefer. *Macquarie*, 601 U.S. at 263-64 (distinguishing these from "pure omissions"). In *Yan v. ReWalk Robotics*, this Court similarly distinguished *Silverstrand* and a pure-omission theory from the type of claim Plaintiff brings here, where a company discloses certain risks or uncertainties, but the plaintiff contends the law required more. 973 F.3d at 33. In *Yan*, the plaintiff argued the defendant violated Section 11 and Item 303 by providing incomplete disclosures regarding a medical device it was developing. The plaintiff argued that these disclosures "failed to include ... enough information," including that the FDA determined that ReWalk's device could harm or kill a user, and the company's "boilerplate recitation of potential adverse regulatory consequences" was insufficient. *Id.* at 29-30, 31, 33. This Court rejected the claim, holding that ReWalk's statements—even if less detailed than those preferred by the

plaintiff—"did not omit the[] risks," and "adequately disclosed the claimed risk or uncertainty." *Id.* at 34. It thus "affirm[ed] the dismissal of the Securities Act claims even as viewed through the lens of Regulation S-K." *Id.*[2]

The district court understood this legal landscape. It also expressly acknowledged that the 1933 Act "creates liability for a 'pure omission.'" Add.015; *see also* Add.004 n.1. It could hardly have been ignorant of that fact: although Plaintiff suggests now that the court mischaracterized its theory by using this term, this "pure omissions" theory is ***exactly what Plaintiff argued below***. *See* A734 (arguing its "Complaint alleges an independent basis for liability ... that neither this Court nor the First Circuit previously considered: 'pure omissions' liability"); *see also* A761 (contending that "Item 303 ... is what's called a pure omissions claim"). And Plaintiff ultimately admits that the court below "held that Item 303 did not give rise to liability," but suggests the court erred because it supposedly "did not analyze

---

[2] The other cases on which Plaintiff relies are distinguishable for the same reason: they were cases of nondisclosures, or disclosures so generic that they might as well have been undisclosed. In *Panther Partners* the defendant relied on "generic cautionary language." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012). In *In re Facebook*, investors "had no way of knowing" about the uncertainties based on defendant's disclosures. *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 512 (S.D.N.Y. 2013). And in *Wang*, defendant's disclosures were "insufficient to apprise investors of then-existing developments" that created uncertainty. *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 231-32 (S.D.N.Y. 2023).

whether any undisclosed trends required to be disclosed under the regulation in fact existed."  Br. 25.

Plaintiff misses the point.  In stating this "is not a pure omission case," the district court observed that "[t]he facts as pled, described above, advance a theory that CVS's statements were misleading, but that it did make disclosures on the topics the plaintiffs' claims challenge."  Add.015.  The district court did not, as Plaintiff claims, fail to analyze whether any undisclosed trends existed.  On the contrary, it found that, just as in *Yan*, CVS's disclosures adequately satisfied its obligations, even if Plaintiff would have preferred other language, and even in light of Plaintiff's allegations.  In so doing, it rejected Plaintiff's omission claims, howsoever defined.

Nor was the district court wrong to rely on *Fire Fighters*.  As this Court held, the same allegations at issue here failed "to allege material facts inconsistent with defendants' public statements"—in other words, did not show that CVS either misrepresented *or omitted* anything.  *Fire Fighters*, 46 F.4th at 33.  And as the district court in *Fire Fighters* concluded, considering CVS's goodwill disclosures in context, "no reasonable investor could have believed that the issues the Plaintiffs claim were omitted did not exist."  *Fire Fighters*, 519 F. Supp.3d at 80, 98.  Here, just as in *Yan*, CVS "did not omit the[] risks" that Plaintiff argues were undisclosed, and "adequately disclosed the claimed risk or uncertainty."  *Yan*, 973 F.3d at 33-34.  Even when presented with the same customer-loss, "come-to-Jesus," and rollover

allegations copied from this complaint, this Court in *Fire Fighters* nevertheless held that those allegations ***still*** did not allege facts that "materially exceeded the losses recognized by CVS Health itself in the pertinent time frames." *Fire Fighters*, 46 F.4th at 37. In other words, even taking into account the allegations here, CVS simply did not fail to disclose anything that was required.[3]

## II.    Plaintiff's Other Theories Fail.

In addition to the primary arguments Plaintiff advances on appeal, it repeats additional arguments that CVS's statements were generally false or misleading. These claims, too, have been roundly rejected by every court to consider these disclosures, including this Court.

Fundamentally, Plaintiff argues that as of February 2018, "a reasonable investor would have understood that the LTC business had retained its full value …, was still performing up to original expectations, and was not presently experiencing material adverse trends that had already materially impacted its business." Br. 41. There is a reason the court below—and each prior court, including this one—rejected this argument: it cannot be reconciled with CVS's disclosures.[4]

---

[3] In the absence of any false or misleading statement or omission, all of Plaintiff's claims under the 1933 Act sections it invokes (Sections 11, 12, and 15) fail.

[4] Because the district court found no actionable misstatements, it did not reach several alternative grounds, each of which independently warrants dismissal, including that many of the challenged statements were inactionable opinions, are protected under the PSLRA's safe harbor for forward-looking statements, are

### A.    Plaintiff's Claims Regarding Goodwill, GAAP Compliance, and the Value of the LTC Unit Fail.

Plaintiff argues that "the Offering Materials misled investors by stating that the LTC's business was unimpaired when, in truth, it was materially impaired by the time the Offering Materials became effective."  Br. 39.  This depends on the hindsight-driven contention that, because CVS determined in late 2018 that a worse-than-expected performance had impaired the LTC unit's goodwill, it should have reached that conclusion earlier.

Plaintiff's goodwill-related claims fail at the threshold.  Goodwill estimates require management's subjective assessment of fair value and forward-looking projections.  *See Fire Fighters*, 519 F. Supp. 3d at 94.  Under black-letter law, statements about goodwill are statements of opinion, and "must therefore be tested under the standard explained by the Supreme Court in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015)."  519 F. Supp. 3d at 95.  The *Omnicare* standard is a high one, because the federal securities laws "do[] not allow investors to second-guess inherently subjective and uncertain

---

inactionable puffery, or barred by the statute of limitations.  Defs.' Mem. ISO Mot. to Dismiss, ECF 52 at 30-38, 44-46.  Nor did the court reach the additional grounds that provide independent bases for dismissing the claims against the Aetna Directors. Aetna Defs.' Mem. ISO Mot. to Dismiss, ECF 53.

assessments," nor are they "an invitation to Monday morning quarterback an issuer's opinions."  575 U.S. at 186.

Securities law condemns such attempts to plead claims on an "inference from later events that such events were known to be likely at the time the registration statement became effective."  *Cooperman v. Individual, Inc.*, 1998 WL 953726, at *8 (D. Mass. May 27, 1998) (dismissing 1933 Act claim), *aff'd*, 171 F.3d 43 (1st Cir. 1999).  Courts routinely dismiss such 1933 Act claims.  *See, e.g.*, *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 68 (1st Cir. 2008).  As this Court explained in *Fire Fighters*, "[o]ur caselaw ... 'does not require a company to be omniscient, even if the company looks foolish in hindsight for not properly predicting whatever harm befell it.'"  *Fire Fighters*, 46 F.4th at 35 (quoting *Karth v. Keryx Biopharms., Inc.*, 6 F.4th 123, 138 (1st Cir. 2021)).

Plaintiff's claim that the LTC unit's goodwill "was materially impaired by the time the Offering Materials became effective," Br. 39, is precisely the "Monday-morning quarterbacking" the Supreme Court has commanded courts to reject. *Omnicare*, 575 U.S. at 186.  Plaintiff argues that CVS's goodwill disclosures are actionable under *Omnicare* because they did not "fairly align with the information" the company "possessed at the time," pointing to alleged customer losses.  Br. 40-42.  But Plaintiff does not allege that CVS failed to consider customer losses in evaluating the LTC Unit's goodwill—nor can it, given CVS's disclosure—rather,

Plaintiff asserts that CVS *did* consider these factors, but should have weighed them differently.  This is not actionable, because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts," and "an investor cannot state a claim by alleging only that an opinion was wrong." *Omnicare*, 575 U.S. at 189-90, 194.  Even setting aside the prior CVS cases—each of which rejected Plaintiff's exact theory—courts "routinely reject[]" claims that a defendant should have recognized an impairment earlier, which "amount[] to mere disagreement with [the company's] accounting judgment." *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *7 (E.D.N.Y. Aug. 6, 2019); *see, e.g.*, *In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *14 (S.D.N.Y. May 7, 2020), *aff'd*, 844 F. App'x 385 (2d Cir. 2021); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*, 856 F.3d 605, 619 (9th Cir. 2017); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *11 (S.D.N.Y. Sept. 30, 2016); *Lucescu v. Zafirovski*, 2018 WL 1773134, at *12 (S.D.N.Y. Apr. 11, 2018).

The cases that Plaintiff cites (at 40-41)—the same ones cited by the plaintiffs in the five dismissed cases—remain an instructive contrast to CVS's disclosures here.  In *In re Chicago Bridge* and *Zwick*, the companies stated flatly that "no indicators of goodwill impairment were identified," or only that "no impairment was

indicated."[5]  And in *Abramson v. NewLink Genetics Corp.*, which was not a goodwill case, the speaker appended to his opinion that "we don't have any reason to believe" otherwise, which the court held could be seen as "impl[ying] that there were no competing facts."  965 F.3d 165, 178 (2d Cir. 2020).  Both are a far cry from CVS's clear warnings that negative factors already were affecting the LTC business's financial outlook and the potential for impairment.  A419.[6]

As the district court correctly noted, Plaintiff alleged a series of customer and bed losses between the Omnicare acquisition in 2015 and "summer of 2017." Add.011; Br. 42 (relying on losses "in the 2016-2017 timeframe").  But that CVS experienced customer losses in 2016 and 2017 is ***entirely consistent*** with CVS's disclosures, which chart a declining value of the LTC unit from 7% above its carrying value in 2016, to only "approximately 1%" above its carrying value in November 2017—which CVS disclosed was due to multiple challenges, including "client retention rates."  A419.

---

[5] *See* Consol. Am. Compl. ¶¶101, 122, 136, 147, ECF No. 84, *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 1:17-cv-1580 (S.D.N.Y.); Second Am. Compl. ¶156, ECF 92, *Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-cv-2475 (M.D. Tenn.).

[6] The defendants in *Strougo v. Tivity Health, Inc.*, 551 F. Supp. 3d 839 (M.D. Tenn. 2021), never argued that goodwill is an opinion, so that issue was never before the court.  And the relevant communications in *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, 22 F.4th 1, 4 (1st Cir. 2021), pertained to the announcement of a new product, not goodwill at all.

Plaintiff also argues that the allegations it highlights are "unlike [those] in *Fire Fighters*." Br. 44. Not so. *Fire Fighters* (and each of the prior dismissed cases) was premised on allegations the LTC unit had suffered customer losses before CVS's impairment test, so the unit was already supposedly impaired. And, as explained above, the proposed amendments this Court evaluated (and rejected) in *Fire Fighters* contained **literally** the same allegations Plaintiff cites here, because the plaintiffs in *Fire Fighters* copied-and-pasted them. *See supra*, pp. 13, 15.

At bottom, Plaintiff argues that its allegations of customer losses and internal meetings are "not 'consistent' with the disclosures in the Offering Materials that the value of the Omnicare goodwill was unimpaired." Br. 45. This is nothing more than the same disagreement with subjective goodwill estimates that Courts routinely reject. Because "previously known trends may later reveal themselves to be of a different magnitude or importance than initially expected," challenges like Plaintiff's "ultimately rest[] entirely on a disagreement about the exercise of judgment." *In re Gen. Elec.*, 2020 WL 2306434, at *14. And although Plaintiff asserts that the district court supposedly erred by faulting their allegations for not alleging net losses, Br. 45-47, this is irrelevant. Even assuming the alleged losses were net (which is not alleged), they are not inconsistent with CVS's disclosures that it had lost customers in 2016 and 2017 such that the estimated fair value of the LTC unit had declined substantially. As the district court put it in *Fire Fighters*, when

47

"[c]onsidering [the goodwill] disclosure in context, no reasonable investor could have believed that the issues the Plaintiffs claim were omitted did not exist." *Fire Fighters*, 519 F. Supp. 3d at 98.[7]

Plaintiff also asserts that CVS falsely certified compliance with GAAP's goodwill-accounting rules.  Br. 50.  This is just another way of framing their goodwill claim—and courts routinely reject this framing, too.  *See In re Gen. Elec.*, 2020 WL 2306434, at *3, *14 (rejecting claims that company did not use "GAAP-compliant accounting"); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (plaintiff's claim that defendants falsely stated they complied with GAAP was "derivative of his primary allegations" and failed for the same reasons); *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *7 n.4  (same); *City of Omaha v. CBS Corp.*, 2011 WL 2119734, at *2 (S.D.N.Y. May 24, 2011) (same), *aff'd*, 679 F.3d 64 (2d Cir. 2012).

---

[7] Plaintiff also asserts its allegations of customer losses "far exceed" the "notice pleading" standard.  Br. 43.  But even federal notice-pleading requires it to plausibly allege each element of its claims, and courts routinely dismiss 1933 Act cases where, as here, plaintiffs fail to allege a false or misleading statement or an omission.  *See supra*, pp. 27, 29-30, 32-34.  In fact, the parallel 1933 Act cases were subject to pleading standards ***lower*** than the federal standard, and were nevertheless dismissed because none of the alleged customer losses contradicted CVS's disclosures as a matter of law.  *See Rizvi v. N. Shore Hematology-Oncology Assocs., P.C.*, 132 N.Y.S.3d 600 (N.Y. Sup. Ct. 2020) (New York pleading standard lower than *Twombly/Iqbal*); *Atwells Realty Corp. v. Scottsdale Ins. Co.*, 2021 WL 2396584, at *3 n.2 (R.I. Super. Ct. June 4, 2021) (same, for Rhode Island).

In sum, Plaintiff's argument assumes the premise that the LTC unit's goodwill was impaired earlier than CVS believed. But that is only a disagreement with CVS's judgment, and thus fails under the substantial weight of the federal caselaw. And each prior case regarding the disclosures have tried, and failed, at this theory as well. *See, e.g.*, A695 (RI opinion).

### B.    Plaintiff's Risk Warnings Claims Fail.

Plaintiff also asserts that the Offering Materials were misleading because risks that "had already materialized" or were described "as merely hypothetical." Br. 47. Here, too, Plaintiff simply repeats the same arguments the several prior courts—including this one—rejected. *Fire Fighters*, 46 F.4th at 35 (rejecting claims that "CVS Health's 'boilerplate risk factors'" were misleading); *LPF*, 144 N.Y.S.3d at 18 ("[T]he fact that defendants' risk disclosures identified the risk as contingent rather than actual did not render the registration statement misleading."); *In re CVS Sec. Litig.*, A696 (same).

As to customer losses, Plaintiff again mischaracterizes CVS's disclosures. Plaintiff's brief (at 47) quotes only company-wide risk disclosures that applied to ***all*** of CVS's businesses. Even there, Plaintiff admits that CVS disclosed the risk of "LTC client loss and/or the failure to win new ... LTC Business." Br. 47; A422, A662. But Plaintiff ignores CVS's entire LTC-specific goodwill discussion, that customer losses ***had already substantially affected*** the LTC unit's cash-flow

projections.  And there is no misrepresentation when, taken "as a whole," the company's disclosures apprise a reasonable investor of the state of the business.  *See Rombach v. Chang*, 355 F.3d 164, 175-76 (2d Cir. 2004).  In the face of CVS's "specific disclosures regarding the risks facing the" LTC unit, investors were put "on notice of these risks and cannot be heard to complain that [they] were masked as mere contingencies." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019).

Plaintiff argues that a defendant cannot simply communicate "boilerplate disclosures that did not jibe with then-existing market facts" to escape liability. *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 842 F.3d 71, 92 (1st Cir. 2016).  But in *Tutor*, the company failed to disclose any problems whatsoever, despite its own certainty of a looming market crash.  *Id.* at 89.  Here, there is no dispute that CVS had warned that customer losses had affected the LTC unit's projections, and despite the Company's hopes, could affect it further.  Plaintiff's other cases are no closer to the mark; in each, the company made no disclosures akin to CVS's here.[8]

---

[8] In *In re Facebook*, the defendant's disclosures were so vague the SEC itself asked defendants for more detail.  *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 496-97.  In *Chiasma*, the defendant's disclosures regarding a new drug treatment insinuated the FDA "might" disagree with its clinical trials even though "the FDA had already stated its disagreement with the Phase 3 trial design by that time." *Gerneth v. Chiasma*, Inc., 2018 WL 935418, at *4 (D. Mass. Feb. 15, 2018).  Similarly, in *In Re Transkaryotic Therapies Inc. Securities Litigation*, the company concealed that the FDA had already denied approval to their drug. 319 F. Supp. 2d 152, 156 (D. Mass. 2004).  In *Arkansas Public Employee Retirement*

As to "rollovers," Plaintiff again mischaracterizes both CVS's risk warnings and the relevant law.  Plaintiff argues that CVS's warnings about potential liability were misleading because Omnicare had supposedly engaged in "undisclosed illegal rollover practices" and "was already facing" financial exposure.  Br. 47.  But any liability associated with the rollover practices *was* hypothetical in February 2018—and consistent with its duties, CVS disclosed the government was investigating these practices, and that liability might ensue.  Requiring anything more simply rehashes Plaintiff's assertion that CVS needed to preemptively accuse itself of wrongdoing. *See supra*, pp. 32-34.

Plaintiff also asserts (at 49) that courts view as misleading warnings that "warn merely about the possibility of sanctions without disclosing ongoing conduct that would trigger" them.  But none of Plaintiff's cases support that sweeping rule. In fact, *Roeder v. Alpha Industries, Inc.* is directly contrary.  814 F.2d 22 (1st Cir. 1987).  Although the plaintiff there argued that the defendant had a duty to disclose the wrongful conduct, this Court *rejected* that position, and affirmed dismissal because "[t]he prevailing view ... is that there is no such affirmative duty of

---

*System v. GT Solar International*, the court concluded that the company concealed from the market its knowledge that, the day after its IPO, it was certain to lose its largest customer.  2009 WL 3255225, at *2 (D.N.H. Oct. 7, 2009).  And in *Burstein v. Applied Extrusion Technologies, Inc.*, the company omitted mention of its precarious financial position entirely.  150 F.R.D. 433, 443 (D. Mass. 1993).

disclosure." *Id.* at 27. The decades of caselaw following *Roeder* have confirmed that rule. *See supra*, pp. 32-34.

The cases Plaintiff cherry-picks are fact-specific exceptions: in each, the companies offered detailed and specific statements on the legal issue—often assuring investors that the company's actions were lawful beyond a doubt.[9] None involved statements like CVS's measured disclosures that it could not "give any assurances" that it would not face liability, including as a result of pending investigations or pending or future *qui tam* suits A365. Nor did CVS's disclosure of the investigation—accompanied by the caution that it "cannot predict with certainty the timing or outcome"—obligate it to accuse itself of wrongdoing or prejudge the outcome. A425.

---

[9] In *Schiro*, the company made specific representations about a particular transaction in Colombia, and "several representations about its internal controls and its compliance with anti-bribery laws." *Schiro*, 396 F. Supp. 3d at 293. In fact, the Colombia transaction had involved millions of dollars in illegal bribes. In *Employees Retirement System of City of St. Lewis v. Jones*, the company engineered "likely the largest ... scheme ever perpetrated against the people of the state of Ohio," despite making "numerous specific statements about their legal compliance and risk management actions." 2021 WL 1890490, at *1, *9 (S.D. Ohio May 11, 2021). And in *In re Tenaris S.A. Securities Litigation*, executives engaged in a decade-long bribery scheme while assuring investors that it was "committed to conducting business in a legal and ethical manner" and specifically discussed that it had implemented "enhancements to [its] compliance program" to avoid bribery. 493 F. Supp. 3d 143, 143, 160-61 (E.D.N.Y. 2020).

Finally, Plaintiff also asserts the district court "did not address the several other risk disclosures at issue" besides the rollover disclosure. Br. 49. But the court spent 12 pages explaining why Plaintiff's allegations established no false or misleading statements or omissions in light of CVS's disclosures. That disposed of Plaintiff's risk-warning arguments on those issues. Plaintiff again assumes the court must have ignored its arguments despite the plain language of its opinion, which noted that Plaintiff alleged that CVS's risk warnings (plural) were misleading, including "for example," the warning regarding rollovers. Add.012. Here, again, Plaintiff attempts to manufacture an error the district court did not commit.

## III. Plaintiff Alleges No False or Misleading Statements Under Section 14.

Plaintiff spends a single page on its Section 14 claims, which it admits "the District Court acknowledged," but contends it "did not directly address." Br. 52. There was no need for the court to do so separately—Plaintiff's Section 14 claim (and subsidiary Section 20 claim) fails for the same reasons.

On appeal, Plaintiff focuses exclusively on a statement from an investor presentation identifying "[s]olid script growth" as a positive. Br. 52. This cannot support a claim for several reasons. First, Section 14 applies only to proxy statements, and under Rule 14a-1, communications outside of formal proxy statements are covered only when made "under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy." 17 C.F.R.

§ 240.14a-1(*l*)(1)(iii).   As explained in the presentation, however, it was "not a solicitation of any vote … in connection with the transaction."  A537; *see also* A530 (transcript of accompanying call stating "today's call is neither an offering of securities nor solicitation of a proxy vote in connection with our announced transaction with Aetna").

Nor was identifying CVS's hope of "solid script growth" false or misleading; once again, Plaintiff takes an incomplete view of CVS's disclosures.  In fact, CVS advised investors that the LTC unit was experiencing "lower bed census"—that is, customer losses—but that it also "expect[ed] solid script growth driven by new initiatives tailored towards assisted-living facilities and benefits from acquisition activity."  A532.  That the growth from new initiatives and acquisitions did not ultimately outweigh the other headwinds the business faced does not render CVS's statements false or misleading.

## CONCLUSION

The Court should affirm the judgment below.

September 11, 2025

Respectfully submitted,



Amanda M. MacDonald

DANIEL J. KRAMER
GEOFFREY R. CHEPIGA
EMILY M. MILLER
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
   *1285 AVENUE OF THE AMERICAS*
   *NEW YORK, NY 10019*
   *(202) 373-3000*

RACHELLE GREEN
CERVENKA GREEN &
DUCHARME LLP
   *225 DYER STREET, 2ND FLOOR*
   *PROVIDENCE, RI 02903*
   *(401) 214-1020*

STEVEN M. FARINA
AMANDA M. MACDONALD
MELISSA B. COLLINS
MICHAEL J. MESTITZ
WILLIAMS & CONNOLLY LLP
   *680 MAINE AVENUE, S.W.*
   *WASHINGTON, DC 20024*
   *(202) 434-5000*

CHRISTOPHER N. DAWSON
WHELAN CORRENTE &
FLANDERS LLP
   *100 WESTMINSTER ST., STE. 710*
   *PROVIDENCE, RI 02903*
   *(401) 270-4500*

*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the appellate NextGen system. I certify that all participants in the case are registered NextGen users and that service will be accomplished by the appellate NextGen system.

September 11, 2025                                    /s/ *Amanda M. MacDonald*
                                                     Amanda M. MacDonald

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Rules 29 and 32 of the Federal Rules of Appellate Procedure, that the attached Appellees' Brief contains 12,977 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2016, in 14-point Times New Roman.

September 11, 2025                       /s/ *Amanda M. MacDonald*
                                          Amanda M. MacDonald